case number 20-1449 B and P Littleford LLC at all versus Prescott Machinery LLC at all. Oral argument is not to exceed 15 minutes per side. Ms. Masseron for the appellant. You're muted, Miss Masseron. I apologize. Mary Masseron on behalf of Hardaway and I'll reserve four minutes for rebuttal. I agree and understand Judge Kethledge. I'm sure I won't need all the time. I think it's important when looking at 28 section 1927 to keep in mind the high standard to impose sanctions against an attorney because doing so necessarily is in tension with the attorney's obligation to represent his client. I'd like to sort of run through the reasons why. First of all, the proceedings here were not multiplied. The N.P. filed what opposing counsel has repeatedly characterized as a single narrow suit and limited to China Lake drawings, which the discussion this morning illuminated the time frame of and that time frame was from 217 on. Secondly, the only other sort of multiplication one could potentially hang their hat on is the amended complaint. The amended complaint was amended by stipulation of both parties. So it's hard to say if the parties have agreed that they're going to allow for an amended complaint, that somehow one of the parties to that agreement can later be sanctioned as having vexatiously multiplied the proceedings. And I think that's important. I think that first element is not satisfied. Then when we go to whether attorney Hardaway's conduct was unreasonable and vexatious, I think there's a couple of key points. I want to present a hypothetical that I think goes to a number of the questions that the court was focused on during the earlier argument and also goes a little bit to some of the court's discussion and differentiation between two separate claims in the Stoll case. If you imagine, for example, that the formula for Coke was misappropriated by hackers access to Coke's electronic files years ago, and then for some reason Coke decided maybe they didn't want to disclose that their electronic files were so easily gotten into, chose not to sue. And then years later, the same person stole a paper copy of the formula for Sprite. I don't think we would say that Coke could not sue for the second theft for the formula for Sprite. It's a different product. It's different information. It was stolen at a different time. It was used at a different time. And in that circumstance, it seems to me this statute of limitations would not have elapsed and certainly would not have elapsed with respect to the Sprite part of that suit. So when brother counsel argues that the continuing misappropriation theory has been adopted, that's true. But we have to be very precise. What is the trade secret or secrets that were stolen? And when? And when were they used? And in this case, this lawsuit was brought and focused upon at the intense argument, successful argument of opposing counsel that it was limited to China Lake and the China Lake. I'd like you to focus in on the discovery section. For me, I'm not so, yeah, I can understand your argument as to why there might be a good faith effort of argument here as to the claims. But what's the defense as to why these documents weren't produced sooner, in particular, the 2015 FBI complaint? I would say a couple of things. First of all, let me speak generally and then let me speak specifically about Attorney Hardaway and his of those are important. With respect to the 2015 complaint, the original narrow suit, which was focused on the China Lake drawings, the 2015 complaint was not relevant. That was the view of BNP, certainly retrospectively. And I think it's a sensible one. The dispute was focused on in the 2015 complaint had nothing to do with China Lake. China Lake had limitations defense in their answer. Prescott raised the statute of limitations defense at the beginning of the case. Is that correct? I apologize. I don't recall the affirmative defenses. But I raised a defense of statute of limitations. Why wouldn't the 2015 complaint be relevant to that defense from the very beginning of the case? Because if we were talking about China Lake, which involved a theft, the project didn't even arise until 2017. So how we had been in our use of China Lake drawings. Before the bid, the Navy even put that RFP out. Okay, we had a request. I mean, among many discovery requests, we had a request for production directed to BNP for all documents reflecting or related to and all those of us who have labored through discovery fights we know related to is broad. Reflecting or related to when and how plaintiff first became aware of the claims asserted in the complaint. I mean, it strikes me a highly tendentious reading at best of that request to think that in this case, with plenty of evidence that at least some of these China Lake documents were in the possession of Miller and Prescott before 2015. To think that this 2015 letter to the FBI about misappropriation among these same two entities, to think that that's not related to anything here. I mean, that if I'm, I'm quite sympathetic to the district judge and in reacting the way they did. I mean, is this the signal we want to send to litigants in the Sixth Circuit that it's okay to behave like this and hold back what seems to be an obviously extremely relevant document until you're about to caught for not producing it? I think that that is certainly the characterization that Brother Council has successfully made in the trial court in judging by your questions has conveyed to this court at least as a reaction. I'm looking myself at the request and then at the document and I'm hard pressed to see where Judge Ludington was abusing his discretion in seeing this to be as far out of bounds as he saw it to be. He, he operated on the assumption that the 2015 complaint was relevant to China Lake. And that's not an assumption. Not relevant. Correct. I mean, relevant, you know, 10, just have a tendency to make something more or less true. It's not at all relevant to whether it's not even relevant or related to whether they should have known in 2015 that these guys were rampantly misappropriating documents. I don't think so. I don't think so. And I think it's very important to think about discovery battles, as your Honor has said, as an appellate lawyer, blessedly, my career has not enmeshed me in the battles of discovery, but I am fully aware that in large cases, document productions are rolling, large, massive numbers of documents are sent back and forth, all sorts of strategic gamesmanship goes on. And I think to pull out of that a sanction in this case, and superimpose retrospectively, the, the view that this was a deliberate orchestrated conduct that this attorney knew this suit was time barred from the outset and sought to hide this, that I think is completely unsupported in the record. It's contrary to Hardaway's affidavit, it's contrary to Slovin's affidavit, and it's contrary to the history of the case. Well, I mean, if one is focusing on the decision not to produce the document earlier than they did, as opposed to what Hardaway said, and I mean, it's I'll be candid with you, it seems indefensible, indefensible, to have failed to produce that document before they did. And these, I mean, and if in fact, that was a violation of the rules, I mean, these violations have very serious consequences every day. You know, parties have to as they did, well, they didn't hear but having to file motions to compel for things that the other side should have done already. Going down blind alleys that they don't know are blind, because the other side hasn't given them what they want. I mean, those of us who actually I mean, I mean, I have spent a lot of time in discovery fights, or I did in my career. And I mean, this is just unless I'm missing something. And that's what I'm inviting, because I you know, I'm wrong a lot. I mean, this, I'm hard pressed to see how Judge Ludington's reaction is an abuse of discretion. Let me say a couple of things. First of all, the sanctions against Hardaway were under 28 USC 1927, not rule 11. That's important. Second of all, Hardaway was not the lawyer who was principally in charge of discovery. He said that in his affidavit. It's absolutely true. There's nothing to refute that Hardaway did not sign a single discovery production throughout the litigation of this case. So to say, well, we're going to pick this lawyer, and we're going to liberally hit this because he was involved. In fact, Hardaway said, he thought this had been forwarded with other documents long since he is the most senior attorney representing BNP in this matter. He is a senior it lawyer who has represented BNP for many years and who when partners, litigation associates, and local counsel, all of whom were doing the in the trenches work on these matters that are now at issue. And I think that's very important for not only Attorney Hardaway, but any attorney who works on a team. And I think we understand this point Let me just check with our clerk. Is it down to zero? Yes, your honor. All right. Any further questions before we hear from opposing counsel? Okay. Let's hear from, I guess, counsel for Prescott. Good afternoon. Again, your honor, Stuart Schwartz appearing on behalf of Prescott Machine and Ray Miller. I did not take this request lightly. It is not something that I routinely do as part of my practice, as it concerns brother or sister counsel. But the circumstances in this case were so egregious that it warranted the sanction or as Judge long-time IP counsel to BNP. According to his affidavit going back nine years, he had a pre-existing relationship based on deposition testimony from Mr. Slovin, pre-existing relationship with Mr. Slovin going back to other companies. He was the one that BNP and Mr. Slovin relied upon. There are other documents in the case evidencing that point. You'll see Mr. Hardaway counseling the company and the board with respect to Mr. Miller going back to 2012, 13, 14. Mr. Hardaway is the one submitting the FBI complaints. And that's in part and in large part why we just sought sanctions under 1927 against Mr. Hardaway. And that is because he's the one on the plaintiff team who unquestionably had full visibility into the entire history. Now, in terms of this argument that it wasn't the 2015 complaint, and I'm not just talking about the 2015 complaint. I know that that's been the focus. That was the focus of Judge Ludington and the focus of some of the papers, but there are a multitude of documents that were only produced after we were forced to file a motion to compel. Let me ask you, I certainly understand the clear view of wrong of withholding documents. And that's a real problem in complex litigation. I would agree. I'm trying to understand the full context of this, though. Am I right that that based on your argument, the judge refused to allow BNP to engage in discovery of items that fell outside the 2000 the China Lake documents and that resulted in that bid in 2018? You are correct that early on in the case, based on the initial complaint, the magistrate judge limited to discovery to the mixer and the China Lake drawings. However, and Judge Kethledge touched on this point, this is not a shifting sands revisionist history of why it wasn't produced. I know that the latest in time iteration is that they did not produce the 2015 complaint or any of these other drawings because they weren't relevant until they amended their complaint to expand beyond China Lake in the mixer. But if you actually look at the cover email, let's start there. The cover email that went to me on the eve of Mr. Slovin's before Mr. Slovin's deposition, they say nothing of the sort. They just say it was overlooked. Or inadvertent. And then Mr. Slovin talks about overlooked. And then you analyze Mr. Hardaway's explanatory affidavit and he offers differing, conflicting versions of why it wasn't produced. But it was at a base level responsive to all of the requests that Judge Ludington highlighted because it encapsulated the mixer drawings. That is all of the drawings. That's plain. But this is a point that I made at the trial court. He did not seize upon it in his opinion, but I'd like to make it here. That 2015 complaint was also very much relevant to whether or not these documents were in fact trade secrets and whether they were protected. When you go through the responses to the FBI and they talk about who these drawings were accessible to, all employees, was there a separate server? No. Where they were located. Is it possible to protect these drawings? No. I mean, there's a host of reasons why that 2015 complaint was relevant, even assuming you're the mixer in China Lake. Did BNP ever raise a confidential informer privilege to avoid producing the FBI reports? Not that I'm aware of, Judge. Okay. Not that I'm aware of. Help me understand also the idea of vexatious misconduct in pursuing this case because the award, well, we're on sanctions, but also the award itself was for the entire scope of the litigation. I'm struggling with the Stolle case that we talked about earlier because what Stolle says is that if you have suspicions, it doesn't say you must file. It says you must conduct a reasonable investigation of the suspicions of misappropriation. And that's kind of where I was in my questions about their investigation in which these companies said, no, we don't have them. Well, really we do, but we're not going to give them to you. Why do you fit within Stolle as showing that he unreasonably and vexatiously multiplied litigation by just suing on the claim? Help me understand how that works if his position and the evidence shows that an investigation, unreasonable investigation was undertaken. Had he brought the claims timely, we would not be here, but he chose not to based on the facts in Stolle. And incidentally, Stolle is a 2015 case that was readily available to Mr. Hardaway as the IP counsel to BNP, as was Kehoe on the issue of this. I don't think that's my question. My question is, if the governing legal rule has to do with whether the entity suing your client for admittedly stealing documents for years, if the question is, did BNP conduct a reasonable investigation and chose then not to file litigation, why is that vexatious to then file it on the 2017-18 misappropriation of the China Lake documents? How do you meet the standard? Again, and this takes us back to the argument in the first case that the statute accrues when the plaintiff knew or should have known. In this case, there is irrefutable documentary evidence showing that they knew and maintained a belief and represented as much to the FBI in a sworn complaint that my clients had the entire database of the drawings. They then sat on those rights, chose to try and pursue my clients criminally, for whatever reason. I know in Mr. Sullivan's affidavit, he says that it would have been too expensive, it would have been too caustic, et cetera. But for whatever reason, they chose to sit on those rights. Only when the FBI declined to prosecute for the second time did they then realize that that was their only avenue. They sat on those rights and then they concealed from my clients the information that should have been produced at the outset of the case, which would have led, based on Judge Ludington's ruling, to a very prompt dismissal. There's nothing that Judge Ludington based his decision on that couldn't have been produced with the initial discovery or in response to our initial discovery request, or as Judge Ludington notes, in the initial discovery disclosures. The case would have been over. Now, Judge Ludington couples that under 1927, that is, that they knew their claims were stale, and he makes factual findings that they chose to withhold critical information. So we're under a 1927 standard here, which is different, as sister counsel noted, than Rule 11 or the standards with respect to the trade secrets. This is to protect the bar. This is to protect our profession. And that's what the case law says. And here you have the attorney who had full visibility into everything, going back to 2012. He signs the FBI complaints. He's on the emails with the FBI. He's meeting with the FBI. And the best he can come up with, as I was under the mistaken impression, that it was produced earlier in discovery, but I guess it was not. And in retrospect, I wouldn't have produced it anyways because it wasn't responsive. Sanctions under 1927 are more than warranted in this case. And Judge Ludington rightly found that they should go back to the original filing of the complaint. Thank you. I don't know if the clock is now working. I don't know. I don't know where I stand with my time. But let me ask you a question. As I see it, the sanctions are for two different things for the bringing of the litigation to begin with. And the second are the discovery violations. So I'm wondering, what if we were only convinced, hypothetically, that there was a discovery violation, but that we aren't necessarily convinced that the bringing of the lawsuit itself was wrongful? Can you still uphold? Can we uphold this award? Or do we need to remand it to be reconsidered in light of the fact that it's only discovery? They only did the discovery sanction that issue. Well, respectfully, Judge, it was not just the discovery. It was certainly coupled with the finding that the complaint should have not been brought in the first instance. Okay. So given that, would you say if we're only concerned about discovery, we would need to send it back for the court to reconsider the ruling as to what the award should be? I don't think so, Your Honor. In particular, and I'd refocus the court, we're dealing with an abuse of discretion standard here. And I believe that Judge Ludington, who sat in this case for almost two years and was very much familiar with the filings and the cadence, made specific factual findings here based on the record that the sanctions should relate back to the original filing of the complaint. Hopefully, that answered Your Honor's question. Okay. I guess it has, right? Yes. Thank you. Thank you. All right, Mr. Schwartz, you've played a doubleheader today, so we thank you for your argument. Thank you, everybody. We will hear a rebuttal. Yes. A couple of points in rebuttal. First of all, I go back again to the standard. The sanctions, insofar as they are against non-party attorney Hardaway, are solely based on 28 U.S.C. 1927, which has to do with vexatiously multiplying proceedings and so forth. And consequently, I don't believe that standard has been met. Just listening to the complexities of the oral argument about the facts and the law governing the statute of limitations that we've heard in the multiple arguments this morning, seems to me that it's not objectively unreasonable for an attorney, even if he turns out to have been wrong in this court's view, to have believed that it was appropriate to bring this narrowly focused suit, which was derived from the misuse of the China Lake drawings in 27-2018. This court has made clear simple inadvertence or negligence that frustrates a trial judge and may perhaps frustrate this court as well, nevertheless doesn't support an action under 1927. And I think that's very important. Secondly, are we talking about simple inadvertence with respect to the failure to produce the 2015 complaint? I think it's very important when we get to that point to ask who are these sanctions being brought against? And I tried to make this sign. I mean, I don't know. I think I know we heard this argument already. So I understand your point. I really do. But I mean, my goodness, he signed this thing. He signed in 2015. He's been he apparently had the lead in pursuing this misappropriation issue generally since 2012. And I guess he doesn't notice that, you know, it's not being produced until, you know, lo and behold, Mr. Slovin is going to be deposed the next day. His unrefuted testimony. Well, it doesn't have to believe the testimony. Right. Well, I don't think the court in imposing sanctions, when there is a lawyer who's not principally in charge of the discovery, and who says, as a matter of his oath as an attorney, that he understood it had been forwarded, but also says, looking retrospectively, I don't think it was relevant, because this action was limited. It seems to me, that's not enough to meet the high standard. And I don't think that's, that's the court's conclusion, that this was some nefarious scheme, that he knew all along before the suit was filed, but he was just filing it to get at Prescott machinery. In fact, if he had been trying to just get at Prescott machinery and Miller, he would have been filing suits all the way along, he might have filed six or seven suits by the time the China Lake project. Well, Mr. Slovin made a decision not to bring suit earlier. That's my point. Mr. Slovin made a decision in the decision was, we don't think we have enough to succeed. We don't want to go down the road. I'm sorry, Your Honor, I thought he said it's too expensive and cost. He did say that he did say that I don't recall him assessing the merits of the potential claim. I think throughout the pleadings in the district court in this case, and certainly with respect to this motion, the argument has been made repeatedly, that the information that was in the 2015 complaint was speculative. It was based on rumor, it was based on their information and belief, which they did not believe was going to be enough to win a lawsuit. We had the proof related to China Lake drawings. Okay, well, I think I think you answered my question. Any further questions from the other judges? All right, very well. We did use all the time. I thank all the lawyers for your fine arguments today. The case will be submitted and the clerk may adjourn the court. This honorable court is now adjourned.